IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CT-3189-FL

| | |
|---|---|
| WEBSTER DOUGLAS WILLIAMS, III, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| MICHAEL CARVAJAL, ) | |
| ) | |
| Defendant.[1] ) | |

This matter is before the court on plaintiff's motion for reconsideration (DE 20) and defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 25). The motion to dismiss was briefed fully and defendant did not respond to the motion for reconsideration. In this posture, the issues raised are ripe for ruling. For the reasons stated below, the court grants the motion to dismiss and denies the motion for reconsideration.

## STATEMENT OF THE CASE

Plaintiff, a federal inmate proceeding pro se, commenced this civil rights action by filing complaint on May 29, 2020, alleging claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 et seq. ("ADA"), and the Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C. §§ 791(f), 794(a), and 42 U.S.C. § 12203(a). Plaintiff alleges defendants discriminated against him on the basis of his disability, retaliated against him for engaging in protected activity,

---

[1] The court dismissed formerly named defendants Ian Connors, D.J. Harmon, Matthew Mullady, Donna Smith, Associate Warden Engle, D. Willis, A. Williams, J. Wade, H. Cintry, Lieutenant Ngo, Thomas R. Kane, and Tamara Lynn by separate order entered March 30, 2021.

and violated his constitutional rights during disciplinary proceedings for refusing a direct order.

On March 31, 2021, the court conducted initial review of this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismissed all claims except plaintiff's discrimination and retaliation claims under the Rehabilitation Act. The sole remaining defendant in the case is Michael Carvajal, the director of the Federal Bureau of Prisons ("FBOP), sued in his official capacity.

Plaintiff filed the instant motion for reconsideration of the March 31 order on April 9, 2021. Plaintiff argues that the court committed various errors of law and fact in that order, and that his constitutional claims, as well as the individual capacity claims under the Rehabilitation Act, should be reinstated. As noted above, defendant did not respond to the motion for reconsideration.

On June 21, 2021, defendant filed the instant motion to dismiss, supported by declaration of Lisa Charles, a supervisory attorney with the FBOP. Defendant argues that plaintiff failed to exhaust administrative remedies with respect to his remaining Rehabilitation Act claims. That same day, the court notified plaintiff that it may construe the motion as one for summary judgment and provided plaintiff with instructions for responding to the motion, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff responded in opposition on July 6, 2021, relying on his administrative grievance records and FBOP policies addressing administrative exhaustion.

## STATEMENT OF FACTS

The factual background, viewed in the light most favorable to plaintiff and drawn from his verified compliant, may be summarized as follows. Plaintiff suffers from several medical conditions and takes a diuretic that causes excessive urination. (Compl. (DE 1) ¶¶ 30-31). On February 28, 2019, plaintiff was walking to his work assignment at FCI-Butner when he developed an overwhelming urge to urinate. (Id. ¶¶ 30, 32-35). As plaintiff approached the restroom, an

alarm was triggered indicating an officer was in distress. (See id. ¶¶ 34, 41-42). D. Willis ("Willis"), a correctional officer exited his office, approaching plaintiff from the opposite direction, and directed plaintiff to return to his housing "cube." (Id. ¶¶ 35, 42). Because plaintiff urgently needed to urinate, he walked past Willis, without acknowledging the order to return to his housing unit, and proceeded to the restroom. (See id. ¶¶ 34–35, 40). Willis confronted plaintiff after he exited the restroom and asked him why he ignored a direct order. (Id. ¶ 38). Plaintiff responded that "I take water pills and I had to use the restroom." (Id.). Plaintiff then immediately returned to his housing unit. (Id.).

Based on the foregoing, lieutenants Ngo and Cintry issued a disciplinary action report charging plaintiff with refusing to obey Willis's order. (Id. ¶ 44). Plaintiff requested a hearing before a Uniform Disciplinary Committee ("UDC"). (Id. ¶ 45). Correctional officers J. Wade ("Wade") and A. Williams ("Williams"), whose positions are "subordinate to" Willis, were assigned to the UDC for plaintiff's hearing. (Id. ¶¶ 22–23). At the hearing, plaintiff explained he disobeyed the order due to his urgent need to urinate, and Willis "intentionally omitted" this fact from the disciplinary action report. (Id. ¶¶ 44–45). Plaintiff also presented copies of the ADA to the hearing officers to support his claim that he was exercising his rights as a disabled person when he ignored Willis's order. (Id. ¶ 45). Wade and Williams declined to review the copies of the ADA and found plaintiff guilty of refusing to obey an order, allegedly stating "who do you think we're going to believe? One of us or an inmate?" (Id. ¶¶ 22–23, 45). Plaintiff was sanctioned with loss of telephone privileges for one month and he is concerned that the disciplinary infraction will affect his eligibility for early home detention. (Id. ¶ 21). Plaintiff's conviction was upheld on appeal. (Id. ¶¶ 55–56).

## COURT'S DISCUSSION

A.  Motion for Reconsideration

The court begins with plaintiff's motion for reconsideration of the March 30, 2021, order. As noted above, plaintiff alleges the formerly named defendants discriminated against him on the basis of his disability, retaliated against him for exercising his constitutional rights and his rights under the Rehabilitation Act, and that the disciplinary proceedings violated his constitutional rights. The court dismissed the constitutional claims because the Bivens remedy is not available for these claims, plaintiff failed to allege sufficient facts to state a constitutional violation, and where Rehabilitation Act does not provide a cause of action against defendants in their individual capacities. (DE 18 at 3–12). Plaintiff argues the court committed numerous errors of law and fact in dismissing the foregoing claims.

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Compared to Rule 59(e) motions to alter or amend a judgment, Rule 54(b) gives district courts "broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).

The discretion provided by Rule 54(b), however, "is not limitless." Id. The court may revise an interlocutory order only in the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest

4

Case 5:20-ct-03189-FL    Document 31    Filed 03/29/22    Page 4 of 12

injustice. Id.; see also Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003).

Here, plaintiff argues the court committed a clear error of law. Having reviewed and fully considered plaintiff's arguments, the court discerns no clear error in the March 30, 2021 order. Plaintiff's argument that the court erred by finding his claims were barred by qualified immunity is misplaced where the court did not rely on that doctrine in its prior order. (See DE 18 at 2–13). With respect to the claims asserting defects in the disciplinary hearing, the court dismissed these claims because plaintiff failed to allege a protected liberty interest, and because such claims are not cognizable as a Bivens action. (Id. at 7–12). Plaintiff's argument that the court failed to account for former defendants' alleged failure to allow him to call witnesses, (see DE 20 at 4), is irrelevant because plaintiff failed to allege the protected liberty interest element of his claim. (DE 18 at 11–12).

Plaintiff further argues that he alleged a protected liberty interest because the sentencing court denied his motion for compassionate release or home confinement on the basis of the disciplinary conviction. (DE 20 at 5). Contrary to plaintiff's claim, the sentencing court did not rely on this fact when denying the motion for compassionate release. See Text Order, United States v. Williams, No. 4:12-CR-969-RBH-1 (D.S.C. June 1, 2020). Finally, the Rehabilitation Act does not permit suits against defendants in their individual capacities. (See DE 18 at 6 (citing Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999)); see also Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Accordingly, plaintiff fails to establish grounds for revisiting the March 30, 2021, order.

5

B. Motion for Summary Judgment

1. Standard of Review

Where defendants' motion to dismiss relies on matters outside the pleadings, the court construes the motion as one for summary judgment. See Fed. R. Civ. P. 12(d). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)

6

("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

    2.    Analysis

As noted, defendant raises the affirmative defense that plaintiff failed to exhaust administrative remedies prior to filing this action. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative

process.  Booth v. Churner, 532 U.S. 731, 741 (2001).

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007).  And the PLRA mandates "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement.  Woodford, 548 U.S. at 83, 90.  Thus, an inmate properly exhausts administrative remedies only if he receives a decision "on the merits" of his grievance and complies with all procedural requirements for appealing the result.  See id. at 90

Here, defendant acknowledges that plaintiff exhausted the Federal Bureau of Prisons' ("FBOP") standard administrative remedy program, which ordinarily is all that is required to comply with the PLRA's exhaustion provision.  See 28 C.F.R. § 542.10 et seq.; (DE 26 at 3). The FBOP, however, provides an additional procedure for exhaustion of administrative remedies when an inmate asserts discrimination or retaliation on account of a disability.  See 28 C.F.R. § 39.170; (DE 26 at 3–4).

Pursuant to 28 C.F.R. § 39.170(d), federal inmates alleging discrimination on the basis of handicap in FBOP programs or activities may file a complaint with the Department of Justice's Director of Equal Employment Opportunity ("EEO").  (See also Charles Decl. (DE 26-1)).  The regulation requires exhaustion of the FBOP's administrative remedy program before the inmate can seek relief with the EEO.  28 C.F.R. § 39.170(d)(1)(ii).  The EEO complaint must be filed within 180 days of completing the administrative remedy program.  Id. § 39.170(d)(3).  After receiving the complaint, the EEO responsible official must complete the initial investigation, attempt informal resolution, and if no resolution is achieved, issue a letter of findings within 180

8

days of receipt of the complaint. Id. § 39.170(g)(1). If dissatisfied with the result, the inmate may file a notice of appeal to the EEO's complaint adjudication officer within 30 days of receipt of the letter of findings. Id. § 39.170(i)(1). The inmate may request an appeal hearing before an administrative law judge. Id. § 39.170(i), (k). The complaint adjudication officer ultimately has 60 days to resolve the appeal, measured from the date on which the investigative record is transmitted to him, or, in the event of an appeal hearing, from expiration of the time period for filing exceptions to the administrative law judge's decision. Id. ¶ 39.170(l)(1).

Plaintiff acknowledges that he did not complete the EEO administrative review process for his Rehabilitation Act claims. (See DE 28 at 1). Plaintiff argues that the EEO procedure was unavailable to him because he did not know about this procedure before he filed the complaint. (Id. at 1–2).

The PLRA provides that an inmate must exhaust "available" administrative remedies. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 642–44 (2016). Exhaustion is therefore not required where the administrative remedy procedure is unavailable to the inmate. Ross, 578 U.S. at 642–44. An administrative remedy procedure is unavailable if: 1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

Plaintiff has not established that the EEO process is unavailable under the foregoing standard. While it is true that the FBOP program statement addressing the administrative remedy program does not mention the EEO procedure for disability claims, (see DE 28-1), that fact does

9

not standing alone establish that the procedure is "so opaque that [the procedure] becomes, practically speaking, incapable of use." Id. The procedure is publicly available and provides inmates with detailed instructions for filing a complaint and exhausting administrative remedies. See 28 C.FR. § 39.170. In addition, a separate FBOP program statement, also publicly available, provides that federal prisoners may file an EEO complaint for disability claims and details the procedures for doing so. See Program Statement 3713.24, Ch. 12, available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=3000.

Furthermore, while the United States Court of Appeals for the Fourth Circuit has not addressed whether EEO exhaustion is required for disability claims, numerous federal courts, including this one, have concluded that federal prisoners must exhaust the EEO procedure. See Cooke v. U.S. Bureau of Prisons, 926 F. Supp. 2d 720, 734–35 (E.D.N.C. 2013); see also Peppers v. Moubarek, No. PWG-19-2346, 2020 WL 5759763, at *9 (D. Md. Sept. 25, 2020); Washington v. Fed. Bureau of Prisons, No. 5:16-CV-3913-BHH0KDW, 2019 WL 2125246, at *7–8 (D.S.C. Jan. 3, 2019); Zoukis v. Wilson, No. 1:14-CV-1041, 2015 WL 4064682, at *10 (E.D.V.A. July 2, 2015); Brown v. Cantrell, No. 11-CV-200-PAB-MEH, 2012 WL 4050300, at *2–4 (D. Colo. Feb. 27, 2013); Haley v. Haynes, No. 210-122, 2012 WL 112946, at *1 (S.D. Ga. Jan. 12, 2012). Plaintiff has access to the FBOP law library and he could have determined from these publicly available sources that the EEO process was required before filing this action. His failure to investigate the administrative remedy procedure for disability claims does not render the process unavailable to him. See Ross, 578 U.S. at 642–44.

Plaintiff also points out the regulation states disabled persons "may file" a complaint with the EEO, suggesting the procedure is not required. See 28 C.F.R. § 39.170(d)(1)(i). While the

10

regulation itself may not require disabled persons to file a complaint, the PLRA requires federal inmates to exhaust all "available" administrative remedies. 42 U.S.C. § 1997e(a). And as discussed above, the EEO procedure is available to plaintiff. The EEO procedure also is directly relevant to plaintiff's Rehabilitation Act claim where it provides Department of Justice officials with expertise in disability discrimination an opportunity to address plaintiff's claim and order meaningful relief. See Woodford, 548 U.S. at 88–89 (discussing purpose of administrative exhaustion, including promotion of settlement of claims at the administrative level and production of a useful administrative record in the event of litigation). Accordingly, the PLRA requires plaintiff to exhaust the EEO procedure. See 42 U.S.C. § 1997e(a); Cooke, 926 F. Supp. 2d at 734–35.

Finally, plaintiff requests that the court hold this action in abeyance pending his exhaustion of the EEO procedure. The PLRA requires exhaustion of administrative remedies before filing the federal action. See 42 U.S.C. § 1997e(a). Accordingly, plaintiff cannot exhaust administrative remedies while this action is pending. See Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017); see also Germain v. Shearin, 653 F. App'x 231, 233–35 (4th Cir. 2016).

In sum, plaintiff failed to exhaust available administrative remedies prior to filing this action. The PLRA therefore bars the remaining Rehabilitation Act claims in this action. See 42 U.S.C. § 1997e(a). These claims, however, will be dismissed without prejudice to refiling after plaintiff exhausts administrative remedies.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 25) is GRANTED, and plaintiff's motion for reconsideration (DE 20) is DENIED. Plaintiff's claims alleging

11

discrimination on the basis of disability and retaliation for exercising his rights under the Rehabilitation Act are DISMISSED WITHOUT PREJUDICE. The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of March, 2022.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge